NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**EDWIN OMAR PEREZ,**

                **Plaintiff,**

**-vs-**                                          **Case No. 6:13-cv-133-Orl-31KRS**

**COMMISSIONER OF SOCIAL SECURITY,**

                **Defendant.**

**REPORT AND RECOMMENDATION**

**TO THE UNITED STATES DISTRICT COURT:**

      This cause came on for consideration without oral argument on the Complaint filed by Edwin Omar Perez, seeking review of the final decision of the Commissioner of Social Security denying his claim for social security benefits. Doc. No. 1.

      The Commissioner answered the Complaint and filed a certified copy of the record before the Social Security Administration (SSA). Doc. Nos. 11, 12. The parties filed their respective memoranda of law. Doc. Nos. 14, 15.

**I.    PROCEDURAL HISTORY.**

      In August 2006, Perez applied for disability benefits under the Federal Old Age, Survivors and Disability Insurance Program (OASDI), 42 U.S.C. § 401 *et seq.*, and under the Supplemental Security Income for the Aged, Blind and Disabled Program (SSI), 42 U.S.C. § 1381, *et seq.* (sometimes referred to herein as the Act). R. 78-84. He later filed new applications, which the Appeals Council consolidated with the previous applications. R. 440. He initially alleged his

NOT FOR PUBLICATION

disability onset date to be August 1, 2005, but that date was amended to December 7, 2006. R. 78, 82, 129.

Perez's applications were denied initially and on reconsideration. R. 29-32. At Perez's request, an Administrative Law Judge ("ALJ") held a hearing. After considering the hearing testimony and other information in the record, the ALJ concluded that Perez could perform his past relevant work. R. 17. Therefore, the ALJ found that Perez was not disabled. *Id.*

Perez asked the Appeals Council to review the ALJ's decision. R. 4. On October 7, 2009, the Appeals Council found no reason to review the ALJ's decision. R. 1. Thereafter, Perez sought review of the Commissioner's final decision in this Court. This Court reversed the decision of the Commissioner under sentence four of 42 U.S.C. § 405(g) and remanded the case for further proceedings. R. 498-508. Thereafter, the Appeals Council vacated the previous final decision and remanded the case for further proceedings. R. 440.

On remand, the ALJ held another hearing. Perez, represented by an attorney, and a vocational expert ("VE") testified at the hearing. R. 443-78. After considering the hearing testimony as well as the evidence of record, the ALJ issued a new decision.

The ALJ found that Perez was insured through December 31, 2011. He had not engaged in substantial gainful activity from December 7, 2006, his alleged disability onset date, to December 31, 2011.

The ALJ found that Perez had a cervical spine disorder with radiculopathy, a lumbar spine disorder and allergies, which were severe impairments. R. 424. The ALJ found that diabetes

NOT FOR PUBLICATION

mellitus, sleep apnea and coronary artery disease were not severe impairments. R. 425, 429. None of these impairments met or equaled a listed impairment. *Id.*

The ALJ determined that Perez had the residual functional capacity ("RFC") to do the following:

> [P]erform sedentary work as defined in 20 CFR 404.1567(a), specifically, during an 8-hour workday with normal breaks; he is limited to standing/walking for 2 hours each; sitting up to 6 hours; avoiding climbing of ladders/ropes/scaffolds; and performing only occasional climbing ramps/stairs, balancing, stooping, kneeling, crouching, and crawling. The claimant must avoid exposure to dangerous work hazards (unprotected heights and exposed machinery) and avoid exposure to concentrated pulmonary irritants. He needs the opportunity to position a computer monitor at a height allowing him to avoid constant down-looking activities while at a desk.

R. 425.

After considering the VE's testimony, the ALJ concluded that Perez could return to his past relevant work as an eligibility worker, which is a sedentary position. R. 430. Therefore, the ALJ found that Perez was not disabled. R. 431.

**II.   JURISDICTION AND STANDARD OF REVIEW.**

Perez having exhausted his administrative remedies, the Court has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g), as adopted by reference in 42 U.S.C. § 1383(c)(3). A court's review of a final decision by the SSA is limited to determining whether the ALJ's factual findings are supported by substantial evidence, *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam), and whether the ALJ applied the correct legal standards, *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

### III. SUMMARY OF THE FACTS.

After a thorough review of the record, I find that the facts are adequately stated in the parties' memoranda. Accordingly, I will only summarize facts necessary to address the issues raised in order to protect Perez's privacy to the extent possible.

Perez was born in 1949. R. 108, 377. He had a college degree in marketing and management. R. 377-78.

Perez worked as a customer service representative for the SSA from 1990 until December 7, 2006. R. 88, 113, 378-79. This was primarily work answering questions over the telephone using a headset. R. 378-79, 456. He could not change positions. R. 458. In this job, he was required to stand or walk 1-2 hours and sit 6-9 hours. He had to stoop 6-8 hours and crouch 1 hour. He lifted 10 to 20 pounds. He had to reach, write, type and handle small objects 8 hours a day. R. 113, 121, 380, 400. A VE classified this job as *Dictionary of Occupational Titles* ("DOT") 195.267-010, a sedentary, skilled job. R. 403. Perez testified that he took many hours of leave without pay beginning in March 2006 due to pain and the side effects of prescribed medication. R. 123.

Perez was injured in an automobile accident in April 2001. R. 187. He was treated at Stangherlin (Chiropractic) Clinics beginning in January 2002 for injuries sustained in this accident, including severe neck pain and back pain with muscle spasms. *See, e.g.*, R. 233.

Robert W. Irwin, M.D., and John Small, M.D., orthopedists, examined Perez on March 9, 2006. Perez complained of neck, back and right arm pain. He was taking Tylenol, Darvocet and a muscle relaxer and had undergone 12 to 16 weeks of physical therapy. He could walk only 1 to 2 blocks. Pain was aggravated with activity. R. 237, 241. Upon examination, Dr. Small observed that

Perez walked with a normal gait. He had restricted range of motion in the neck. R. 238. A straight-leg raising test was negative. R. 239. X-rays showed severe C4-5 and C5-6 degenerative disc disease and severe loss of disc height at L5-S1 and mild at L4-5. He also had moderate left hip degenerative changes. The diagnoses were spinal stenosis in the cervical region, cervicobrachial syndrome and CTS/carpal tunnel syndrome. They prescribed physical therapy, medication and further radiologic studies. R. 240-41.

A cervical MRI performed on March 21, 2006, revealed a moderate disc extrusion at C6-7 with impingement of the nerve root, and bulges at C4-5 and C5-6. R. 242-43.

On April 6, 2006, Drs. Irwin and Small prescribed Vicodin for pain. On examination, they noted that Perez was tender to palpation in the lower thoracic and lumbar. An NCS/EMG was normal on the left arm. R. 244-45. On May 30, 2006, Dr. Small found that Perez was not improving with conservative care and recommended epidural steroid injections ("ESI") and further radiologic tests. He indicated that Perez could return to activity as tolerated. R. 248.

On June 13, 2006, an MRI of the lumbar spine revealed a disc bulge with protrusion at L1-2 and 2-3. There was also a disc bulge at L3-4 impinging the nerve root. R. 246-47.

On June 29, 2006, Perez was examined by Howard Jackson, M.D. Perez complained of neck pain and low back pain with weakness and numbness in the neck, fingers and legs. Perez reported that his pain was most intense when he first woke up in the morning. The pain was aggravated with walking, standing, sitting, stooping, bending and activity in general. The pain was relieved by lying down and medication. Perez could walk less than a mile. He still exercised regularly. R. 228. Upon examination, Dr. Jackson observed that Perez walked with a normal gait and could bend to knee

NOT FOR PUBLICATION

level. A seated straight leg raising test was positive for back pain. Dr. Jackson also reviewed the March 2006 and June 2006 MRIs. Dr. Jackson prescribed Celebrex and epidural injections. He indicated that Perez could return to activity as tolerated. R. 231, 254-55.

A treatment note from the Stangherlin Clinics dated August 31, 2006 reflects that Perez complained of severe neck pain and mid and lower back pain with spasms, among other things. R. 187. The treating professional observed that Perez had restricted range of motion in the cervical spine. The treating professional found that Perez was unable to work. R. 189.

On October 11, 2006, Rohit M. Patel, M.D., wrote that he had treated Perez since August 1998. He opined that Perez suffered from allergic rhinitis, DJD of the spine (arthritis of the back), chronic back pain and diverticulosis. When his condition exacerbates, Perez would need to take time off. R. 257. Dr. Jackson also wrote that Perez might have to take intermittent time off work due to cervical and lumbar disc pain. R. 258.

From October 12 to October 16, 2006, Perez was off work for administration of steroid injections in his lower back. R. 280. On October 30, 2006, Dr. Jackson observed that Perez walked with a normal gait. He had restricted rotation of the neck. R. 214. Dr. Jackson opined that Perez could return to activity as tolerated. R. 214-15. He limited Perez to no bending, no sitting longer than 30 minutes without a 5-minute break and maximum lifting of 15 pounds. R. 279.

Dr. Small observed on November 2, 2006 that Perez walked with a normal gait and stood with no list. After review of MRIs of the cervical and lumbar spine taken in June 2006, Dr. Small concluded that Perez had an L4-5 degenerative disc. R. 194.

NOT FOR PUBLICATION

Dr. Jackson performed a discogram on November 8, 2006. Thereafter, Perez continued to have significant pain. R. 293. A CT of the lumbar spine taken in November 2006 revealed fissures with minimal disc bulge at L3-4, disc bulge and protrusion at L4-5 with impingement at L4, and annular degeneration and fissuring at L5-S1 with a disc bulge. R. 210.

Dr. Small continued to treat Perez through 2007. *See, e.g.*, R. 293-306. On January 9, 2007, Dr. Small did not recommend surgery because he did not believe that surgery would improve Perez's condition. He noted that Perez had not responded well with conservative measures. Dr. Small recommended that Perez not return to work and that he seek an early retirement. R. 190-91.

On March 5, 2007, the United States Office of Personnel Management ("OPM") approved Perez's application for FERS disability retirement due to severe neck pain. R. 171-74. OPM indicated that it could not pay disability benefits until Perez applied for Social Security disability benefits. R. 171.

On June 7, 2007, Ronald Kline, M.D., prepared a physical RFC assessment based on review of Perez's records. Dr. Kline opined that Perez could lift 20 pounds occasionally and 10 pounds frequently. He could sit, stand or walk about 6 hours in an 8-hour workday. He could only occasionally engage in postural activities. R. 312-27.

On September 25, 2007, Perez began treatment with Albert J. Razzetti, M.D. Dr. Razzetti referred him to Stephane Lavoie, M.D., for neck and back pain. R. 356-58.

On December 19, 2007, Dr. Lavoie examined Perez for back and neck pain. Dr. Lavoie observed on examination that Perez had mild discomfort with range of motion of the cervical spine and pain with flexion of the lumbar spine. He noted that a MRI showed disc herniation at C6-7 with

spondylosis, disc disease at C5-6 and degenerative disc disease of the lower lumbar spine with mild stenosis. His impression was chronic back pain and bilateral lumbar radiculopathy associated with degenerative disc disease and cervical spondylosis with foraminal stenosis and radiculopathy. Perez was not interested in surgical treatment. Dr. Lavoie recommended consultation with a pain management specialist. R. 332-33.

On March 26, 2008, Perez indicated that he was leaving for a 5-week trip to Puerto Rico. R. 353. He went there to care for his mother. R. 633. He had medical treatment in Puerto Rico, but the records are partially in Spanish and largely illegible. R. 679-89.

In May 27, 2008, Perez began treatment with Nathan J. Hanflink, D.O., at Pain Medicine Associates. Perez complained of back and neck pain with radiculopathy. Upon examination, Dr. Hanflink observed mild tenderness to palpation at L3 to S1 with minimal lumbar muscle spasms. Range of motion in the lumbar spine was decreased due to pain. Perez's gait was slightly antalgic and straight-leg raising tests were positive. Dr. Hanflink's assessment was low back pain with lumbar radiculitis. Dr. Hanflink prescribed Motrin, Lortab and Soma. R. 330-31.

On June 30, 2008, Perez returned to Dr. Hanflink's practice, where he was treated by Padmaja R. Yatham, M.D. Perez's condition had not improved. Dr. Yatham prescribed Avinza (a morphine based medication) and Lortab. R. 329.

On June 6, 2008 and February 23, 2009, Perez told Marielle B. Lazard, M.D., a cardiologist, that he was physically active running, playing basketball and swimming. R. 334, 336.

In July 2009, Frank L. Denoff, M.D., examined Perez for right knee pain. An X-ray was normal. Dr. Denoff indicated that Perez probably had lateral tendinitis, for which he prescribed a

NOT FOR PUBLICATION

knee sleeve and Ibuprofen. R. 624. On September 8, 2009, Dr. Denoff indicated that the tendinitis was resolving and recommended that Perez do exercises to strengthen the knee. R. 621.

Perez continued treatment with Dr. Razzetti for pain and other issues. *See, e.g.*, R. 629-77. On September 21, 2010, he complained of increased neck and back pain and that his right leg was giving way with loss of sensation. R. 645. In March 2011, Perez told Dr. Razzetti that he had increasing upper back pain and mid-lower back pain. R. 638. He continued to complain of pain radiating into his right hip and thigh on June 7, 2011. R. 634.

An MRI taken on June 15, 2011 revealed a disc bulge at L3-4 with impingement on the nerve root. R. 653-54.

Dr. Lavoie examined Perez again on June 27, 2011. Perez complained of neck and back pain radiating down his right leg. His leg sometimes was numb and he had a hard time holding his weight. R. 617. Cervical range of motion was slightly restricted. He had pain on flexion of the spine past 70 degrees. He had full strength in his legs. An X-ray revealed spondylosis mainly at L4-5 with minor spinal stenosis and some foraminal stenosis at L3-4 on the left. An old MRI revealed disc herniation. Dr. Lavoie's impression was cervical and lumbar spondylosis with right lumbar radiculopathy with stenosis. He recommended physical therapy and use of Neurontin at night. R. 618.

Radiologic studies in May 2012 revealed thoracic and lumbar spondylosis. R. 683-84. The study of the cervical spine showed severe straightening of the normal cervical lordosis with some reversal as well as severe narrowing of the intervertebral disc spaces with large marginal osteophytes and facet arthropathies. R. 683.

During the ALJ's hearing in July 2009, Perez testified that he had constant pain in his neck and his back. R. 380-81, 394-95. Pain medication relieved the pain a bit in the afternoon. R. 381. The pain radiated down his legs, mostly on the right. R. 382, 396. He took Ibuprofen generally but also Oxycodone, Hydrocodone and Avinza for breakthrough pain. R. 383. Medication had side effects of acid reflux, headaches, flushing, drowsiness and stupor. R. 400. He did not want surgery because he feared he would be paralyzed. R. 396, 457. He was recently diagnosed with arthritis in his right knee for which crutches were prescribed. R. 391; *see also* R. 371.

He could not lift more than 20 pounds. R. 460. He had lower back problems with sitting more than 30 minutes to 1 hour. R. 397-98. He could stand in one place for 10 to 15 minutes. He could walk for a limited time. R. 398. It hurt to bend and he had difficulty standing back up. R. 399.

During the day, Perez would go grocery shopping with his wife but he would sometimes sit and read while she shopped. From time to time, they would see a movie or shop for clothes. Perez prepared breakfast and lunch. R. 386. He helped making beds and doing light housework. R. 387. He was able to drive when he was not taking heavy pain medication. R. 400-01. He also attended Bible classes. R. 387. He walked in the pool. R. 388. He denied telling the cardiologist that he played basketball. R. 391.

At the supplemental hearing in August 2012, Perez testified that his neck and back pain had increased. R. 451. His right knee was painful and buckled under him. R. 453. Sitting relieved the knee pain. A fixed position with his neck while reading or working on a computer was also painful. R. 453-54. He could only use a computer for 10 to 15 minutes because of pain. R. 454. He took Vicodin, Darvocet, Avinza, Ibuprofen, Celebrex and Carisoprodol (a muscle relaxant). R. 459. The

medications caused side effects of dizziness, drowsiness, fatigue, stomach upset and stupor. R. 460.

The ALJ asked the VE to assume a hypothetical person of Perez's age, education and work background with the following functional capacity:

> [T]he individual is limited to sedentary work activities which would involve up to six hours of sitting in an eight-hour work day and up to two hours standing and walking in an eight-hour work day, with the understanding the individual gets to take normal breaks during the work day. They need to avoid ladder, rope, or scaffold climbing and they need to avoid more than occasional postural motions, which would be ramp and stair climbing, balancing, stooping, kneeling, crouching and crawling. They will need to avoid exposure to dangerous work hazards, which would include unprotected heights and exposed machinery. . . . [T]hey . . . need to avoid exposure to concentrated pulmonary irritants.

R. 463. The VE testified that this hypothetical person could perform Perez's past relevant work. *Id.* If this hypothetical individual had to change position as often as every 30 minutes, it would impair the ability to perform Perez's past relevant work because the person would need to input information into the computer while talking on the telephone. R. 465-72.[1] The VE testified that most computer monitors can be adjusted. R. 474.

---

[1] For example, the VE testified as follows: "[I]t's hard to determine what the work flow is going to be at any given time. If you are in a busy call center, it can be continuous. And you only get a break when someone takes you off the queue for answering calls. If you have a slack day, yeah, you may be able to get up and stretch, move around a little bit, but – sit right back down. . . . [T]hat can't be timed at a 30-minute interval. . . . [M]ost employers . . . you have to be available to take the work flow as it comes. And if it's a really busy day, you have to be there and that doesn't allow you to get up – and the flexibility." R. 467-68.

## IV.  ANALYSIS.

Perez asserts three assignments of error.  He submits that the ALJ failed to state the weight given to the opinions of each of the medical professionals and there was no good cause for the ALJ's decision not to give controlling weight to the opinion of Dr. Small, a treating physician.  He contends that the ALJ erred by failing to incorporate the need to change positions frequently in the RFC determination.  He also asserts that the ALJ failed to give the proper weight to the decision of OPM that he could not perform his past relevant work.  These are the only issues I will address.

     *A.*     *Weight Given to Statements of Medical Professionals.*

The United States Court of Appeals for the Eleventh Circuit requires the ALJ to state with particularity the weight given to different medical opinions and the reasons therefor.  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).  Treatment notes are considered medical opinions. *Id.*  Absent good cause, the ALJ is required to give substantial or considerable weight to the opinion of a treating physician.  "Good cause exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'" *Id.* (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004)).  When the ALJ disregards a treating physician's opinion, she must clearly state the reasons for doing so.  *Id.*

Perez argues that the ALJ failed to mention the opinions of Drs. Jackson, Patel and Stangherlin.  The Commissioner does not dispute that assertion.  Rather, she argues that these opinions were not relevant because they pertain to a time before the alleged disability onset date and because Perez continued to work after these physicians treated him.

NOT FOR PUBLICATION

The sequential evaluation process requires the ALJ to first assess whether a claimant's alleged impairments lasted or can be expected to last for a continuous period of not less than 12 months. This evaluation necessarily requires that the ALJ consider medical evidence before the alleged disability onset date to determine when the impairment began. *See, e.g.*, 20 C.F.R. §§ 404.1512(d), 416.912(d). Therefore, evidence before the alleged disability onset date is not irrelevant to a disability determination.

The Commissioner is correct that Perez continued to work after he was treated by Drs. Patel, Stangherlin and Jackson. Notably, Dr. Jackson released Perez to return to work on October 30, 2006 with the following conditions: no bending, no sitting longer than 30 minutes without a 5-minute break and maximum lifting of 15 pounds. R. 279. This opinion was rendered about 5 weeks before the disability onset date and is, therefore, directly relevant to the determination of Perez's RFC as of the disability onset date. Furthermore, in her original decision, the ALJ found that Perez would be required to change positions as frequently as every 30 minutes during the work day for brief periods of time while remaining in the work station. R. 13. The ALJ does not explain in the most recent decision why she rejected her earlier assessment, which was consistent with the opinion of Dr. Jackson. Under these circumstances, I recommend that the Court find that the ALJ erred by failing to state the weight given to the opinion of Dr. Jackson and by failing to state good cause for failing to credit it.[2]

---

[2] Should the Court remand the case for further proceedings, it would be appropriate to also require the Commissioner to state on remand the weight given to the opinions of Dr. Patel and the treating professional at the Stangherlin Clinic.

Perez also contends that the ALJ erred by giving only some weight to the opinion of Dr. Small and little weight to his opinion that Perez could not work. The only reasons stated for giving less than considerable weight to Dr. Small's opinions is that his opinions appear to be primarily driven by the claimant's subjective complaints and he did not set forth specific work restrictions.

Although Dr. Small did not provide specific work restrictions, he did indicate after the alleged disability onset date that Perez's condition was not improving with conservative care and that it was unlikely that surgery would bring improvement in Perez's condition. The ALJ's finding that Dr. Small relied primarily on Perez's subjective complaints is not supported by the record. Dr. Small relied on radiologic studies that showed that Perez had degenerative disc disease with nerve root impingement and physical examinations that revealed restricted range of motion and tenderness on palpation. Therefore, substantial evidence does not support the ALJ's conclusion that Dr. Small relied primarily on Perez's subjective complaints. Reversal is also warranted because the ALJ did not state good cause for failing to give considerable weight to Dr. Small's opinion.

### B. *The RFC Determination.*

Perez argues that there is no medical opinion supporting the ALJ's conclusion that he could stand for 2 hours, walk for 2 hours and sit for 6 hours out of an 8-hour day and that the ALJ erred by failing to include the need to change positions frequently. The Commissioner correctly notes that the responsibility for determining a claimant's RFC is a decision reserved to the ALJ. *See, e.g.*, 20 C.F.R. § 404.1527(d)(2). Nevertheless, Social Security Ruling 96-8p requires an ALJ to explain why an RFC assessment conflicts with an opinion from a medical source. SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996).

NOT FOR PUBLICATION

As discussed above, the ALJ's RFC assessment conflicts with the limitations imposed by Dr. Jackson shortly before the alleged disability onset date. The ALJ did not explain why she did not credit those limitations. This is particularly troubling when, in her original decision, the ALJ included in the RFC the need to change positions, which was a requirement imposed by Dr. Jackson. When, as here, the ALJ fails to state with clarity the grounds for her decision, the Court may not affirm simply because some rationale might have supported her conclusion. *Winschel*, 631 F.3d at 1179.

C. *The OPM Disability Decision.*

OPM determined on March 7, 2007, that Perez could not perform his previous job as an eligibility worker due to severe neck pain. The ALJ did not give weight to that decision.

While Social Security regulations provide that a decision by another agency that a claimant is disabled are not binding on the SSA, 20 C.F.R. §§ 404.1504, 416.904, the Eleventh Circuit has found that a finding of disability by another agency is entitled to great weight. *See Falcon v. Heckler*, 732 F.2d 827, 831 (11th Cir. 1984) (Florida Division of Worker's Compensation disability finding); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1241 (11th Cir. 1983) (Florida Retirement Division disability finding); *Rodriguez v. Schweiker*, 640 F.2d 682, 686 (5th Cir. Unit A Mar. 1981) (VA disability rating). Social Security Ruling 06-3p also requires the ALJ to explain the consideration given to the disability decisions of other agencies. SSR 06-3p, 2006 WL 2263437, at *45596-97 (Aug. 9, 2006).

The present case presents the unusual situation in which an employee of the SSA was found to be unable to perform his previous job with the SSA that the ALJ later found he could perform. Perez cites to the OPM website, which states that before he could have been found to be disabled, the SSA

would have been required to certify that it was unable to accommodate his disabling medical condition in his present position. Doc. No. 14 at 14 n.9. Under these circumstances, while the disability decision made by OPM was based on slightly different criteria than used by the SSA[3], the determination that Perez could not perform his past relevant work with the SSA is especially probative.

In *Bridges v. Astrue*, the Court was faced with a similar factual situation. In that case, Plaintiff Bridges had been found disabled by OPM for her job as a rural mail carrier. She applied for SSA disability benefits. The ALJ did not give any weight to the OPM disability finding and found that Bridges could return to her past relevant work as a rural mail carrier.

The ALJ explained the rejection of the OPM disability finding using language similar to that used by the ALJ in the present case, as follows:

> The undersigned has noted that the claimant has been approved for disability retirement through the U.S. Office of Personnel Management (OPM). However, the criteria for disability benefits through OPM are not comparable to the criteria as set forth for Social Security disability benefits. Furthermore, the Administration is not bound by the finding of disability by any other agency or institution.

---

[3] "'To qualify for disability retirement benefits under FERS, an employee must meet the following requirements: (1) the individual must have completed at least 18 months of civilian service that is creditable under FERS; (2) the individual must, while employed in a position subject to FERS, have become disabled because of a medical condition, resulting in a deficiency in performance, conduct, or attendance, or if there is no such deficiency, the disabling medical condition must be incompatible with either useful and efficient service or retention in the position; (3) the disabling medical condition must be expected to continue at least 1 year from the date the application for disability retirement is filed; (4) accommodation of the disabling medical condition in the position held must be unreasonable; and (5) the individual must not have declined an offer of reassignment to a vacant position.'" *Bridges v. Astrue*, No. 5:09-cv-498-Oc-JBT, 2011 WL 549715, at * 7 n.9 (M.D. Fla. Feb. 8, 2011) (quoting 5 C.F.R. § 844.103).

*Compare Bridges,* 2011 WL 549715, at * 7, *with* R. 430. The Court found that this conclusory statement was insufficient to justify the ALJ's failure to accord great weight to OPM's disability finding. *Bridges*, 2011 WL 549715, at *7.

The ALJ's explanation in the present case about the reason she did not give great weight to the disability determination by OPM is also too conclusory. Therefore, this assignment of error is also well taken.

### D. *Proceedings on Remand.*

Because of the errors discussed above, I recommend that the final decision of the Commissioner be reversed. Perez asks that the case be remanded with a direction to award him benefits. An award of benefits is appropriate only when the Commissioner has considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. *See Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993). Because the Commissioner has not yet properly evaluated Perez's RFC, particularly including the need to change positions frequently, and the OPM disability finding, it is not clear that he has established disability for purposes of SSA benefits without any doubt. Therefore, it appears that remand for further proceedings is required.

## V. RECOMMENDATION.

For the reasons set forth herein, it is **RESPECTFULLY RECOMMENDED** that the decision of the Commissioner be **REVERSED** and that the case be **REMANDED** under sentence four of 42 U.S.C. § 405(g) for further proceedings. I further recommend that the Court direct the

NOT FOR PUBLICATION

Clerk of Court to issue a judgment consistent with its Order on this Report and Recommendation and, thereafter, to close the file.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**RESPECTFULLY RECOMMENDED** this 17th day of January 2014.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies to:
Presiding District Judge
Courtroom Deputy Clerk
Counsel of Record